**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

| | |
|---|---|
| VICTOR LOZANO,<br>Individually and as the representative of a class<br>of similarly-situated persons,<br><br>      Plaintiff,<br><br>    v.<br><br>TWENTIETH CENTURY FOX FILM CORP.,<br>a Delaware corporation; TWENTIETH<br>CENTURY FOX HOME ENTERTAINMENT<br>LLC D/B/A FOXSTORE.COM, a Delaware<br>limited liability company<br><br>      Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) No. 1:09-cv-06344<br>)<br>) District Judge Amy J. St. Eve<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>**

   Plaintiff seeks to bring a claim on behalf of a putative class of wireless phone users who allegedly received an unsolicited text message advertising the release of the PG-rated animated movie, "Robots."  But plaintiff has failed to state a claim because the plain language of the Telephone Consumer Protection Act does not expressly include text messages, which were not available to wireless phone users when the law was enacted in 1991.  Plaintiff also fails to state a claim because he does not allege that he was charged for the text message or that Defendants employed a random dialing mechanism – both of which are required elements of a TCPA claim.  Because of these fatal flaws, this Court should dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

## I.  BACKGROUND

### A.  Factual Allegations

Plaintiff initially filed his Class Action Complaint ("Complaint") in the Circuit Court of Cook County.  Defendants, Twentieth Century Fox Film Corp. and Twentieth Century Fox Home Entertainment D/B/A Foxstore.com (collectively, "Fox" or "Defendants"), filed a notice of removal in this Court on October 9, 2009.  (See Notice of Removal, Docket No. 1.)  Plaintiff makes general allegations regarding a "pernicious form" of marketing via a technology that Plaintiff refers to, in a calculated yet awkward way, as "text message calls" (see, e.g., Compl. ¶ 11) or "text calls" (see, e.g., id. ¶ 14 ("[A] text call was being received.")).  In common parlance, this technology is commonly known as "text messaging" or "SMS," which stands for "short message service."

Plaintiff alleges that, on October 1, 2005, he received a text message advertising "THE HILARIOUS ANIMATED FILM ROBOTS ON DVD @FOXSTORE.COM."  (Compl. ¶ 15.)  Plaintiff alleges that he did not consent to receive "wireless spam text messages from Defendants."[1]  (Id. ¶ 24.)  He alleges that Defendants sent the messages "to a list of wireless telephone numbers . . . using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  (Id.)  Plaintiff alleges that this conduct violated the Telephone Consumer Protection Act (TCPA), specifically 47 U.S.C. § 227(b)(1)(A)(iii), and alleges no other counts in the Complaint.  (Compl. ¶ 26.)  Plaintiff seeks to represent a nationwide class of "all others . . . who received one or more

---

[1] Plaintiff's allegations refer generally to "defendants," without specifying which defendant took which action or explaining why he brings this suit against both Defendants.  The bases for dismissal that Defendants assert herein apply equally to the claims against both Defendants.

unauthorized text message advertisements on behalf of FoxStore," a class that Plaintiff, on "information and belief," asserts contains "over 1,000 members." (Compl. ¶¶ 18-19.)

**B.    The TCPA**

The TCPA was enacted in 1991. Pub. L. 102-243. The statute makes it "unlawful for any person . . . to make any <u>call</u> (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service, . . . or any service for which the called party is charged for the call . . . ." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). The statute defines the term "automatic telephone dialing system" as "equipment which has the capacity-- (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The statute does not define "call." Nor does it include any mention of a "text message."

**II.    A TEXT MESSAGE IS NOT A CALL UNDER THE TCPA**

Plaintiff attempts to create an entirely new category of wireless communications that he has labeled "text message calls" and "text calls." (<u>See, e.g.</u>, Compl. ¶¶ 1, 3.) But there is no such thing as a "text message call" or a "text call," either in common usage, the TCPA, or wireless phone contracts.[2]

---

[2] <u>See</u> Verizon Wireless, http://www.verizonwireless.com/b2c/store/controller?item=planFirst& action=viewPlanDisplay&planId=27333&typeId=1&orderKey= (accessed November 18, 2009) (in describing Verizon's Nationwide Basic calling plan, referring to voice calls as "calls," and text messages as "Text Messages"); AT&T Wireless, http://www.wireless.att.com/cell-phone-service/legal/plan-terms.jsp (accessed November 18, 2009) (in describing AT&T's "Plan Terms," referring to voice calls as "calls," and text messages as "text messages"). The Court may note the phone carriers' use of these terms, which is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," through the doctrine of judicial notice. <u>See</u> <u>Grimes v. Navigant Consulting, Inc.</u>, 185 F Supp. 2d 906, 913, 914 n.7 (N.D. Ill. 2002) (considering publicly available stock price data in ruling on motion

In interpreting the language of a statute, "the court starts with the language employed by Congress and assumes that the legislative purpose is expressed by the ordinary meaning of the words used." Barker v. Int'l Union of Operating Engineers, Local 150, 641 F. Supp. 2d 698, 705 (N.D. Ill. 2009).

Plaintiff's proposition – that a text message is a "call" simply because it is received by a cell phone – would lead to absurd results. Through a ubiquitous modern technology known as unified messaging, cell phone users can now receive not only telephone calls and text messages but also e-mails and faxes on their mobile phones. Plaintiff's interpretation of the statute would therefore require application of § 227(b)(1)(A) to those forms of communication and to any new or existing technology that a cell phone might ever receive as technology develops, even if, as with faxes, the TCPA itself already separately regulates their use. This hypothetical extension of Plaintiff's interpretation illustrates the absurdity of stretching the statute so far beyond its original intention and words. See AT&T Corp. v. City of Portland, 216 F.3d 871, 276-77 (9th Cir. 2000) (refusing to apply statutes regarding cable television services to emerging cable broadband Internet technology); see also BedRoc Ltd., LLC v. United States, 541 U.S. 176, 185-86 (2004) (looking to meaning of statutory language at time of enactment to interpret language); Sanders v. Jackson, 209 F.3d 998, 1000 (7th Cir. 2000) ("[I]n particular we look at how a phrase was defined at the time the statute was drafted and enacted."). The Court should not read an expansive reach into the statute through its use of the common term "call."

The statute itself supports a more restrictive understanding of the word "call." Where Section 227(a)(4) defines a banned "telephone solicitation," it refers to a "message or call." This

---

to dismiss, and noting 7th Circuit cases that look to reliable Internet sources for information outside the record) (quotation omitted).

phrasing obviously indicates that a "call" and a "message" are two different things.[3] See Witzke v. Femal, 376 F.3d 744, 753 (7th Cir. 2004) (Courts "read a statute to give effect to each word so as to avoid rendering any words meaningless, redundant, or superfluous.").

Section 227(b)(1)(A), on the other hand, only makes it unlawful "to make any **call**. . . using any automatic telephone dialing system" (emphasis added). Even if the term "message" could be construed to include SMS text messages, § 227(b)(1)(A) does not prohibit sending a "message" using an automatic dialing system. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." United States v. Doig, 950 F.2d 411, 414-15 (7th Cir. 1991) (quoting Russello v. United States, 464 U.S. 16, 23 (1983)) (additional citations omitted). Applying this rule of construction, the statute's language certainly indicates a narrower understanding of the word "call" than Plaintiff's strained usage. Analysis of the plain meaning of the statute thus demonstrates its meaning, and the Court need not examine legislative history or other extrinsic sources to glean any further intent. BedRoc, 541 U.S. at 186.

However, two courts in other jurisdictions have examined this statute and reached the opposite conclusion. In Joffe v. Acacia Mortgage Corp., 121 P.3d 831 (Ariz. 2005), rev. denied, the Court of Appeals of Arizona (an intermediate appellate court), held that the defendant had violated the TCPA by sending a message by e-mail that ultimately was delivered to the plaintiff as an SMS text message. See id. at 832-33. The court deemed that message to be a "call" under the TCPA by reading a dictionary definition into the statute: "to communicate or try to

---

[3] As used in § 227(a)(4), a "message" equally obviously does not refer to a text message – Congress could not intend by that word to regulate technology that did not exist when the statute was drafted. Instead, "message" apparently refers to a voice recording, either one left on an answering machine or played when the phone subscriber answers a call.

5

communicate [ ] by telephone." Id. at 835.  Similarly, in Satterfield v. Simon & Schuster, Inc., 569 F.3d 946 (9th Cir. 2009), the Court of Appeals for the Ninth Circuit held that a text message was a "call" under the TCPA, also resorting to dictionary definitions and citing Joffe.  Id. at 953-54.  In short, these courts saw the word "call" and replaced it with the word "communicate."

Defendants respectfully request that the Court reject the holdings of Joffe and Satterfield.  Each of those decisions relies on dictionary definitions to the exclusion of the context and import of the statute itself.  Where, as here, the TCPA language is clear and does not mention "text" messages, a resort to a dictionary is unnecessary.  Even in those instances where a dictionary definition may be helpful to ascertain a common meaning or congressional intent, the dictionary definition in this context accomplishes neither of those tasks.  Text messages did not exist in 1991 when the statute was passed, so no dictionary from then or now can answer the question of how Congress intended to regulate a technology that did not exist when it enacted the TCPA.  See Satterfield, 569 F.3d at 954 (The TCPA "was enacted in 1991 when text messaging was not available.").  More generally, as Judge Posner stated in Unelko Corp. v. Preston Products Corp., 116 F.3d 237 (7th Cir. 1997), in the context of interpreting whether a contract's prohibition of "marketing" encompassed a print advertisement:

> [Review of dictionary definitions] is a sideshow.  A dictionary . . . is just a sampling of usages, with no pretense to exhaustiveness or to sensitivity to the full range of nuances that context lends to meaning.  As it happens, the Random House Dictionary's failure to include "advertise" under [its definition of] "market" cannot have been a deliberate rejection of [an unstated meaning]; . . . it is altogether standard English to say of a producer of consumer products that it markets its products to its customers through [advertising].

Id. at 241 (emphasis in original); see also McBoyle v. United States, 283 U.S. 25 (1931) (disregarding the "etymologically . . . possible" definition of the statutory term "vehicle" and applying its meaning as used "in everyday speech" and as "evoke[d] in the common mind").

Blindly replacing the word "call" in the TCPA with a dictionary definition does not adequately interpret the meaning of the word within the context of the statute.

The Federal Communications Commission (FCC) has taken the position that SMS text messages fall within the prohibition of § 227(b)(1)(A); however, unlike Satterfield and Joffe, it has not stated any reason for that determination. The FCC's Report and Order In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 18 F.C.C.R. 14014 (2003) ("2003 Order"), states that § 227(b)(1)(A)(iii) "encompasses . . . text calls to wireless numbers including, for example, short message service (SMS) calls . . . ." 2003 Order at ¶ 165. For the reasons described above, Defendants submit that the FCC's interpretation is incorrect, as it is contrary to the statutory language and intent. Further, this statement in the 2003 Order amounts to, at most, an "interpretive rule" of the FCC to which this Court need afford no deference. See Shalala v. Guernsey Mem. Hosp., 514 U.S. 87, 99 (1995) (An "interpretive rule [is] issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers. Interpretive rules do not require notice and comment, although . . . they also do not have the force and effect of law and are not accorded that weight in the adjudicatory process.") (quotations and citations omitted).

Even if the Court were inclined to give some weight to the FCC's interpretation because of its status as a rulemaking body, it should nevertheless reject the FCC's order because it was issued without appropriate notice. In the Notice of Proposed Rulemaking that preceded the 2003 Order,[4] the FCC sought comment on a wide range of issues, mainly dealing with the federal Do Not Call registry. See, e.g., 2002 NPRM ¶¶ 13-20, 49-66. Regarding the subject matter of

---

[4] In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed Rulemaking and Memorandum Opinion and Order, 17 F.C.C.R. 17459 (Sept. 18, 2002) ("2002 NPRM").

7

§ 227(b)(1)(A), the FCC only requested comment on the definition of an "automatic telephone dialing system" and whether certain new technologies fall within that definition. The FCC did not request comment on the definition of a "call." 2002 NPRM at ¶¶ 23-27. Thus, the statement in the FCC's 2003 Order regarding the inclusion of SMS text messages within the statutory term "call" was not properly subject to notice and comment, and it was stated in the 2003 Order without any further explanation or analysis. See 2003 Order at ¶ 165; Sorenson Commc'ns Inc. v. Fed. Commc'ns Comm'n, 567 F.3d 1215, 1222 (10th Cir. 2009) ("[T]he FCC must . . . articulate a satisfactory explanation for its action."). The FCC failed to follow appropriate administrative procedures in making its determination, and accordingly the Court should grant its opinion no deference. See CSX Transp., Inc. v. Surface Transp. Bd., No. 07-1369, 2009 WL 3400957, at *3 (D.C. Cir. Oct. 23, 2009) ("A final rule qualifies as a logical outgrowth if interested parties should have anticipated that the change was possible, and thus reasonably should have filed their comments on the subject during the notice-and-comment period.") (citations omitted).

While some authority supports the theory underlying Plaintiff's Complaint, the better reasoning is to reject Plaintiff's interpretation and dismiss his claim. The TCPA's provisions regarding "calls" do not (and could not have been intended to) apply to text messages. Because Plaintiff does not and cannot allege that he received a "call" as that term should be interpreted under the TCPA, the Court should dismiss his claim.

### III.   THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE IT DOES NOT ALLEGE THAT HE WAS CHARGED FOR RECEIVING THE TEXT MESSAGE

Plaintiff's Complaint does not expressly allege that his wireless phone service charged him for receiving the text message from Defendants. (Compl. ¶¶ 14-17.). He simply makes the generalized allegation that "cell phone users must frequently pay for each text message call they

8

receive or for a text plan that includes a specified amount or number of messages." (Compl. ¶ 12.) This issue is dispositive because the TCPA only applies to "calls" for which the user is charged. Accordingly, because Plaintiff fails to allege that he was in fact charged for receiving the text message that is the subject of his Complaint, he fails to state a claim under the TCPA.

Section 227(b)(1)(A)(iii) applies to automated calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or <u>any service for which the called party is charged for the call</u> . . . ." § 227(b)(1)(A)(iii) (emphasis added). In its first rulemaking under the TCPA in 1992, the FCC clarified that the statute does not prohibit calls to cell phones for which a user is not charged.[5] Defendants submit that the FCC's interpretation in 1992 remains correct today. Section 227(b)(1)(A)(iii) obviously aims, by its categorization of types of prohibited calls, to protect consumers from automated calls for which the consumer cannot avoid being charged; indeed, that aim is specifically reflected in the final category in that subsection. This statutory purpose is not accomplished by prohibiting calls for which the consumer is not charged. In fact, all the major national wireless phone companies offer unlimited text message plans.[6] Because Plaintiff's Complaint does not allege that he was charged by his phone company to receive any

---

[5] <u>In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991</u>, Report and Order, 7 F.C.C.R. 8752 (1992) ("1992 Order") ¶¶ 43, 45 (responding to questions from cellular phone companies as to whether the TCPA prohibited them from sending their customers automated calls for which the customers would not be charged).

[6] <u>See</u> Sprint, http://nextelonline.nextel.com/NASApp/onlinestore/en/Action/DisplayPlans (accessed November 18, 2009) (advertising numerous cell phone plans with unlimited text messaging); AT&T, http://www.wireless.att.com/cell-phone-service/services/index.jsp (accessed November 18, 2009) (same); Verizon Wireless, http://www.verizonwireless.com/b2c/splash/plansingleline.jsp (accessed November 18, 2009) (same); T-Mobile, http://www.t-mobile.com/shop/plans/Cell-Phone-Plans.aspx?catgroup=EvenMorePlus (accessed November 18, 2009) (same).

text message, the Court should dismiss his Complaint for failure to state a claim upon which relief can be granted.

## IV. THE COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT BECAUSE HE DOES NOT ALLEGE DEFENDANTS' USE OF A RANDOM OR SEQUENTIAL NUMBER GENERATOR

Plaintiff's claim rests upon an unconstitutional construction of the TCPA's definition of autodialing equipment. However, this Court should adopt a narrower construction that both accomplishes Congress's purpose with respect to autodialing technology and avoids running afoul of the First Amendment's protection of free speech. Under this narrower construction, Plaintiff pleads himself out of court by alleging that Defendants sent a text message to Plaintiff in a manner that the statute does not prohibit.

### A. Plaintiff Does Not Allege Use Of A Random Or Sequential Number Generator

Plaintiff alleges that Defendants sent text messages "to a list of wireless telephone numbers" that included his number. (Compl. ¶ 24.) Then, directly quoting from § 227(a)(1), Plaintiff alleges that Defendants were "using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (Id. (emphasis added).) The only logical interpretation of Plaintiff's allegation is that Defendants used equipment with the capacity to randomly or sequentially generate numbers, but that they did not use that "capacity" and instead used a list of numbers that included Plaintiff's cell phone number. Although the FCC and one other court have endorsed this interpretation, this Court should reject it as violative of the First Amendment and instead adopt a narrower construction.

The FCC and the Satterfield court have interpreted § 227(a)(1) broadly to include conduct that does not even involve the "random or sequential number generator" to which the statute refers. In the 2003 Order, the FCC ruled that the statute could be applied to prohibit calls

10

made to a <u>list</u> of numbers that were <u>not</u> randomly or sequentially generated, so long as the calls were made without human intervention. See 2003 Order, ¶ 132-33. The <u>Satterfield</u> court reached a similar conclusion without considering whether such a broad prohibition violates the free speech guarantee of the First Amendment. 569 F.3d at 951. Essentially, the FCC and <u>Satterfield</u> read the phrase "using a random or sequential number generator" out of § 227(a)(1)(A). The FCC concluded that this disregard for the statute's language was permissible because the statute would then apply to equipment that has the same "basic function" as a "random or sequential number generator" – that is, "the capacity to dial numbers without human intervention."[7] 2003 Order, ¶ 132.

Even before reaching the constitutional concerns that this interpretation creates, the Court should refuse to accept it because it is contrary to the plain language of the statute. The statute, clearly and in detail, describes the type of equipment to which it applies, and it does not grant the FCC the ability to alter and expand that plain language. This Court need not and should not accept the FCC's interpretation of the statute under such circumstances. See <u>Fast v. Barnhart</u>, 397 F.3d 468, 470 (7th Cir. 2005) ("This court reviews the [Social Security Administration] ALJ's legal conclusions <u>de novo</u>."); <u>Dormeyer v. Comerica Bank-Ill.</u>, 223 F.3d 579, 582 (7th Cir. 2000) (stating that administrative agencies can issue regulations to carry out duties that Congress has assigned but may not otherwise change the meaning of a statute); <u>Batanic v. INS</u>, 12 F.3d 662, 664 (7th Cir. 1993) (When "Congress has spoken precisely to the question at issue . . . and its intent is clear, we must reject any contrary constructions by the agency."). The TCPA provisions upon which Plaintiff relies do not prohibit the use of a list of numbers, only use

---

[7] Plaintiff does not allege that Defendants sent text messages to any list without human intervention.

of a random or sequential number generator. The Court should apply that language and dismiss Plaintiff's Complaint for failure to state a claim.

### B. If The TCPA Does Not Require Actual Use Of A Random Or Sequential Number Generator, Then It Is Unconstitutional

The FCC/Satterfield interpretation of § 227(a)(1) impermissibly restricts speech under the First Amendment. The implications of such an interpretation are concerning. A party could be held liable under the TCPA for using a telephone or other device that had the ability to dial random or sequential numbers even if the party had manually dialed the number at issue. For example, someone using a personal computer to dial a specific cell phone number using voice over Internet protocol (VoIP) technology would violate the statute if that same personal computer also had an independent, unused "capacity" to generate random numbers.

Such a broad prohibition constitutes an impermissible restraint on free speech.[8] Section 227(b)(1)(A) is a content-neutral time, place, and manner restriction on speech. See Joffe, 121 P.3d at 841-42.[9] A content-neutral time, place, and manner restriction "survives a First Amendment challenge if it serves a significant governmental interest, is narrowly tailored to serve that interest, and leaves open ample alternative channels for communication of information." Joffe, 121 P.3d at 841 (citing Ward v. Rock Against Racism, 491 U.S. 781

---

[8] Defendants have standing to make a facial challenge to the constitutionality of the statute, which applies to both commercial and non-commercial speech. See Board of Airport Commissioners of the City of Los Angeles v. Jews for Jesus, Inc., 284 U.S. 569, 574 (1987) ("[A]n individual whose own speech or conduct may be prohibited is permitted to challenge a statute on its face because it also threatens others not before the court – those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid . . . .").

[9] Joffe examined the constitutionality of § 227(b)(1)(A), but did not consider the precise issue raised here. See Joffe, 121 P.3d at 838 ("[Defendant] does not dispute its computers randomly or sequentially produced telephone numbers."). While numerous courts have examined the constitutionality of various other provisions of the TCPA (such as its prohibition on unsolicited commercial faxes), Defendants have been unable to locate any case examining the constitutionality of the interpretation of "capacity" set forth in Satterfield.

(1989)). Applying this test, the TCPA is unconstitutional if it applies to use of equipment with the capacity to randomly dial numbers regardless of whether that capacity is used. The TCPA would, in effect, ban use of equipment with certain features even if the features themselves were not used. This statutory construction would not serve any governmental interest and would not be narrowly tailored to serve that interest. Both Joffe and Satterfield concluded that the interest at stake in § 227(b)(1)(A) is the government's interest in "[p]rotecting the privacy of the home from unwarranted and unrequested intrusions." Joffe, 121 P.3d at 842; see Satterfield 569 F.3d at 954 (referring to invasion of privacy). In fact, however, an unused feature on a piece of equipment that is used to make a call does not in any way invade the privacy of the party receiving the call. If a link exists between dialing cell phone numbers randomly or sequentially and the government's interest in protecting the privacy of the home, then that interest can be addressed by a regulation that addresses that concern; a statute that essentially prohibits the possession of equipment with the capacity to randomly generate numbers is vastly overbroad. The Court should not allow Plaintiff to allege a claim under that reading of the statute.

### C. If The Court Interprets The TCPA To Avoid An Unconstitutional Construction, Then Plaintiff Fails To State A Claim

To avoid this unconstitutional construction, the Court should interpret § 227(b)(1)(A) to prohibit use of a random or sequential number generator, not mere use of equipment that has that capacity. See Zadvydas v. Davis, 533 U.S. 678, 689 (2001) (Courts should read statutes, when possible, in a manner that avoid constitutional invalidation.). If the Court adopts such a construction, then it should dismiss Plaintiff's Complaint for failure to state a claim.

Despite Plaintiff's near-direct quotation of the statute, he actually pleads himself out of court when he alleges both that Defendants were using a list and that they were using equipment with the capacity to generate numbers. See McCready v. eBay, Inc., 453 F.3d 882 (7th Cir.

13

2006) ("[I]f a plaintiff pleads facts which show he has no claim, then he has pled himself out of court."). Because the use of a list of numbers, as opposed to the random or sequential dialing of numbers, does not violate § 227(b)(1)(A), the Court should dismiss Plaintiff's Complaint for failure to state a claim.

## V. CONCLUSION

For the reasons stated herein, Defendants request that the Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Respectfully submitted,

Twentieth Century Fox Film Corporation
and Twentieth Century Fox Home
Entertainment LLC d/b/a Foxstore.com

Dated: November 18, 2009     By:   /s/ Steven P. Mandell
                                    One of their attorneys

Steven P. Mandell (ARDC #6183729)
Steven L. Baron (ARDC #6200868)
John D. Fitzpatrick (ARDC #6277475)
Shari R. Albrecht (ARDC #6288927)
Mandell Menkes LLC
333 W. Wacker Drive, Suite 300
Chicago, Illinois 60606
312-251-1000

178444