**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| VICTOR LOZANO, individually and on behalf of a class of similarly situated individuals, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation, TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC D/B/A FOXSTORE.COM, a Delaware limited liability company, | ) ) ) ) ) ) |
| Defendants. | ) ) |

No. 09-cv-6344

Honorable Amy J. St. Eve

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Defendants Twentieth Century Fox Film Corp. and Twentieth Century Fox Home Entertainment LLC d/b/a Foxstore.com's (collectively "Defendants") Motion to Dismiss Pursuant to Rule 12(b)(6). For the following reasons, the Court denies Defendants' motion to dismiss.

**BACKGROUND**

For purposes of deciding Defendants' motion to dismiss, the Court accepts the following allegations as true. Defendants are film studios and/or retailers of movies on DVD. Defendants market their products, in part, by transmitting advertisements via Short Message Services ("SMS" or "text messaging") to consumers. Text messaging allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, typically limited to 160 characters. A text message is a call that is directed to a wireless device through the use of the telephone number assigned to the device. Cell phone users must frequently pay

their wireless service providers for each text message they receive, or for a cellular text messaging plan, whether or not they authorize the receipt of a text message.

On October 1, 2005, Plaintiff Victor Lozano ("Plaintiff") received a text message from Defendants advertising the animated film "Robots" available on DVD on Defendants' website, FoxStore.com. Defendants sent the text message to a list of wireless numbers "using equipment that had the capacity to store or produce telephone numbers to be called, using a random or sequential number generator." (R. 1-1, Complaint, ¶ 24.) Plaintiff did not consent to receive this wireless text message. Over the next several months, Plaintiff received additional "spam" text message advertisements from Defendants.

Based on these allegations, Plaintiff alleges that Defendants' conduct in sending the text message violates the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(b)(1)(A)(iii). Plaintiff seeks to represent a class of consumers who received one or more unauthorized text message advertisements from Defendants on behalf of FoxStore.

## LEGAL STANDARD

### I.    12(b)(6) Motion to Dismiss

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit recently explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th

Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d

1 (2002)).  This short and plain statement must "give the defendant fair notice of what the claim

is and the grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957)).  Under the federal notice pleading standards, a plaintiff's "factual

allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550

U.S. at 555.  Put differently, a "complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937,

1949, 173 L. Ed. 2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570).  "[W]hen ruling on a

defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained

in the complaint."  *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081

(2007); *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009) (court construes complaint

in light most favorable to plaintiff drawing all reasonable inferences in plaintiff's favor).

## II.     Statutory Provisions

Whether Plaintiff has stated a claim under the TCPA turns on the statutory language of

47 U.S.C. § 227(b)(1)(A)(iii).  Section 227 of the TCPA, entitled "Restrictions on use of

telephone equipment," provides:

(a) Definitions. As used in this section–

(1) The term "automatic telephone dialing system" means equipment which has the capacity–

(A) to store or produce telephone numbers to be called, using a random or
sequential number generator; and
(B) to dial such numbers.

\*\*\*

(b) Restrictions on use of automated telephone equipment.

(1) Prohibitions. It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States–

    (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice–

        (i) to any emergency telephone line (including any "911" line and any emergency line of a hospital, medical physician or service office, health care facility, poison control center, or fire protection or law enforcement agency);
        (ii) to the telephone line of any guest room or patient room of a hospital, health care facility, elderly home, or similar establishment; or
        (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

    (B) to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission under paragraph (2)(B).

47 U.S.C. § 227.

## ANALYSIS

## I.    A Text Message Is a "Call" Under the TCPA

Section 227 of the TCPA places certain restrictions on the making of a "call." Defendants first contend that the Court must dismiss Plaintiff's complaint because a text message is not a "call" under the TCPA. Before reaching the merits of Defendants' argument, the Court must determine whether to afford deference to the FCC's interpretation of the word "call" in § 227.

### A.    Agency Deference

The parties dispute whether the Court should afford deference to the FCC's interpretation of the term "call." The TCPA grants the FCC the authority to "prescribe regulations to

implement the requirements of [§ 227(b)]." 47 U.S.C. § 227(b)(2).  In a 2003 document entitled

"In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,"

the FCC stated:

> We affirm that under the TCPA, it is unlawful to make *any call* using an automatic
> telephone dialing system or an artificial or prerecorded message to any wireless
> telephone number.  Both the statute and our rules prohibit these calls, with limited
> exceptions, "to any telephone number assigned to a paging service, cellular telephone
> service, specialized mobile radio service, or other common carrier service, or any service
> for which the called party is charged."  This encompasses both voice calls and text calls
> to wireless numbers including, for example, short message service (SMS) calls, provided
> the call is made to a telephone number assigned to such service.

18 F.C.C.R. 14014, 2003 WL 21517853 (July 3, 2003) ("2003 FCC Rules").

Pursuant to *Chevron U.S.A. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837,

842-843, 104 S.Ct. 2778 (1998), courts must defer to agency interpretation of a statute where

Congressional intent is unclear, and a statute affords an agency authority under the statute.  To

determine whether *Chevron* deference is applicable, the initial question is whether Congress "has

directly spoken to the precise question at issue," either by defining an ambiguous term or by

using an unambiguous term that clearly evinces congressional intent.  *See Chevron*, 467 U.S. at

842-43; *Ardestani v. I.N.S.*, 502 U.S. 129, 135, 112 S. Ct. 515, 116 L. Ed. 2d 496 (1991).  When

interpreting the language at issue, courts "assume[] that the legislative purpose is expressed by

the ordinary meaning of the words used."  *Barker v. Int'l Union of Operating Eng'rs, Local 150*,

641 F. Supp. 2d 698, 705 (N.D. Ill. 2009) (citing *INS v. Phinpathya*, 464 U.S. 183, 189, 104 S.

Ct. 584, 78 L. Ed. 2d 401 (1984)).

In analyzing an agency's interpretation of a statute, the Court first applies traditional

tools of statutory construction to the language of the statute to determine its plain meaning.

*Chevron*, 467 U.S. at 843 n. 9.  The agency's interpretation of the statute must not conflict with

the plain meaning of the statute. *Sullivan v. Everhart*, 494 U.S. 83, 88-9, 110 S. Ct. 960, 108 L. Ed. 2d 72 (1990); *K Mart Corp. v. Cartier, Inc.*, 486 U.S. 281, 291-292, 108 S. Ct. 1811, 100 L. Ed. 2d 313 (1988). If Congress' intent is not clear, the Court determines whether the agency's answer is based on a permissible construction of the statute. *See Chevron*, 467 U.S. at 843; *Ali v. Achim*, 468 F.3d 462, 468 (7th Cir. 2006); *see also Thomas Jefferson Univ. v. Shalala*, 512 U.S. 504, 512, 114 S. Ct. 2381, 129 L. Ed. 2d 405 (1994); *Lemus-Losa v. Holder*, 576 F.3d 752, 755-756 (7th Cir. 2009). *Paragon Health Network, Inc. v. Thompson*, 251 F.3d 1141, 1145 (7th Cir. 2001). The Court may look to the legislative history of the statute to determine whether the agency's interpretation is permissible. *See Chevron*, 467 U.S. at 845; *Harrell v. United States Postal Serv.*, 445 F.3d 913, 924 (7th Cir. 2006); *Square D Co. v. Comm'r*, 438 F.3d 739, 745 (7th Cir. 2006). The Court must uphold an agency's permissible interpretation even if it differs from the construction the Court would have given the statute if the question initially had arisen in a judicial proceeding. *Lemus-Losa v. Holder*, 576 F.3d 752, 755-756 (7th Cir. 2009). *See also Ali*, 468 F.3d at 468 (citing *Chevron*, 467 U.S. at 843 n. 11).

With regard to the second part of the *Chevron* test, the Seventh Circuit has noted that, "[d]eference in accordance with *Chevron* . . . is warranted only 'when it appears that Congress delegated authority to the agency generally to make rules carrying the force of law, and that the agency interpretation claiming deference was promulgated in the exercise of that authority.'" *Black v. Educ. Credit Mgmt. Corp.*, 459 F.3d 796, 799 (7th Cir. 2006) (citing *United States v. Mead Corp.*, 533 U.S. 218, 226-27, 121 S. Ct. 2164, 150 L. Ed. 2d 292 (2001)). "Deference is appropriate when agencies wield delegated interpretive or adjudicatory power--the former usually demonstrated by rulemaking and the latter by administrative adjudication (which also

may yield rules in common-law fashion)." *In re UAL Corp*., 468 F.3d 444, 449 (7th Cir. 2006)

(citing *Mead*, 533 U.S. at 229-30).   Whether an agency's interpretation outside the formal notice-

and comment rulemaking process is entitled to deference depends on a series of factors

including, "the agency's care, its consistency, formality, . . .  relative expertise, and . . .

persuasiveness of the agency's position." *Mead,* 533 U.S. at 228.   Otherwise, the interpretation

is "'entitled to respect' only to the extent it has the 'power to persuade.'" *Black*, 459 F.3d. at

799 (citing *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S. Ct. 161, 89 L. Ed. 124 (1944);

*Gonzales v. Oregon*, 546 U.S. 243, 126 S. Ct. 904, 914-15, 163 L. Ed. 2d 748 (2006)).

### 1.      Ambiguity of "Call" Under 47 U.S.C. § 227

Applying the *Chevron* test to the present facts, the initial question is whether the meaning

of the term "call" is clear under the TCPA.   While the TCPA prohibits certain forms of "calls,"

the TCPA does not define the term "call." *See* 47 U.S.C. § 227(b)(1).   Defendants argue that the

language of the statute is clear, and that accordingly resort to dictionary definitions is

unnecessary.   Defendants assert that "telephone calls are *oral* communications measured by

duration."  (R. 37-1, Defendants' Reply, p. 4) (emphasis added).

As other courts have recognized, however, limiting the definition of the word "call" to

oral communications by phone does not comport with the remainder of § 227.   Rather than

prohibiting calls to a telephone, § 227(b)(1)(A)(iii) prohibits a person from making a "call" "to

any telephone *number* assigned to a paging service, cellular telephone service, specialized

mobile radio service, or other radio common carrier service, or any service for which the called

party is charged for the call."   Accordingly, because the statute prohibits calls to telephone

numbers associated with paging services, it is clear that the term "call" cannot invoke only the

common usage suggested by Defendants in which a "call" refers to oral communication between two parties via telephone. *See, e.g., Abbas v. Seeling Source, LLC,* 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697 (N.D. Ill. Dec. 14, 2009) ("[N]either the above-quoted dictionary definition nor the TCPA requires that a 'call' be 'oral.' Indeed, if such a requirement existed, the TCPA's prohibition on calls to 'a paging service,' would be of little effect.") (internal citation omitted).

Defendants also argue that the plain meaning of the statute is clear because § 227(b)(1)(A) only refers to "calls," while § 227(a)(4) refers to both "messages" and "calls." Defendants' argument that "the statutory language differentiates between text messages and calls," however, is disingenuous. Section 227(a)(4), as Defendants note in a footnote, refers to a voice recording left on an answering machine, or a pre-recorded message played when a phone subscriber answers a telephone call. Indeed, as Defendants repeatedly assert, text messaging capabilities were not available when Congress enacted the TCPA in 1991. Defendants have accordingly failed to establish that Congress' use of the term "message" in § 227(a)(4) requires an interpretation of § 227(b)(1)(A) that does not prohibit the sending of text messages.

Indeed, Defendants' arguments highlight the ambiguous nature of the term "call" as employed in § 227(b)(1)(A). *See also G.M. Sign, Inc. v. MFG.com, Inc.*, 2009 WL 1137751, 2009 U.S. Dist. LEXIS 35291, *5-*6 (N.D. Ill. Apr. 24, 2009) (finding the term "call" in § 227 ambiguous); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (finding that the TCPA "is silent as to whether a text message is a call within the Act"); *Joffe v. Acacia Mortgage Corp.*, 211 Ariz. 325, 121 P.3d 831 (Az. Ct. App. 2005) (applying rules of statutory construction to determine "what Congress intended when it used the word call" in § 227 of the

TCPA).  Given that the meaning of the term "call" is unclear in § 227, the Court turns to the

degree of deference to afford the FCC's interpretation of the word "call."

### 2.    Degree of Deference Afforded to the FCC

Relying on *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99, 115 S. Ct. 1232, 131 L.

Ed. 2d 106 (1995), Defendants argue that the Court need not afford deference to the FCC

interpretation of the word "call" in § 227 because the 2003 FCC Rules amount to, at most, an

"interpretive rule."  In *Shalala*, however, the Supreme Court only stated that interpretive rules

issued by agencies do not have the *effect of law*, and in fact held that an agency's guideline was a

valid interpretive rule.  *Id.* at 90.  As the Seventh Circuit has explained:

> If an agency is to assume the judicial prerogative of statutory interpretation that *Chevron*
> bestowed upon it, it must use, not necessarily formal adjudicative procedures or its
> closest nonadjudicative counterpart, which is notice and comment rule-making . . . but,
> still, something more formal, more deliberate, than a simple announcement.  A simple
> announcement is too far removed from the process by which courts interpret statutes to
> earn deference.  A simple announcement is all we have here.  One fine day the policy
> statement simply appeared in the Federal Register.  No public process preceded it -- or at
> least the part of it that concerns section 8(b), for the policy statement deals with other
> matters as well.

*Krzalic v. Republic Title Co.*, 314 F.3d 875, 881 (7th Cir. 2002).

The deference that the Court will give to the FCC's position that text messages fall

within the prohibitions of § 227(b)(1)(A) is limited because in its 2002 Notice of Proposed

Rulemaking preceding the 2003 FCC Rules, the FCC did not specifically invite comment on the

definition of the term "call," or even refer to SMS text messaging.  *See* In re Matter of Rules and

Regulations Implementing the Telephone Consumer Protection Act of 1991, Notice of Proposed

Rulemaking and Memorandum Opinion and Order, 17 F.C.C.R. 17459 (Sept. 18, 2002) ("2002

Notice").  The 2002 Notice did note, however, that, "[n]ew technologies have emerged that

allow telemarketers to better target potential customers and make it more cost effective to market using telephones and facsimile machines. . . . In this Notice of Proposed Rulemaking (NPRM), we seek comment on whether the Commission's rules need to be revised in order to more effectively carry out Congress's directives in the TCPA." *Id.* at 17460.  The 2002 Notice thus refers to "new technologies" generally, but does not specifically request comment regarding the application of the TCPA to text messaging.  Moreover, the 2003 FCC Rules do not provide any explanation for the FCC's interpretation of § 227 as applicable to text messages.

As a result of the FCC's failure to invite more specific comments on the application of the TCPA to text messaging, the Court declines to afford complete deference to the FCC's interpretation.  As discussed below, however, because the FCC's interpretation is reasonable and consistent with the language and purpose of the TCPA, the Court will afford the FCC interpretation limited deference.  *See, e.g., G.M. Sign, Inc. v. MFG.com, Inc.*, 2009 WL 1137751, 2009 U.S. Dist. LEXIS 35291, *5-*6 (N.D. Ill. Apr. 24, 2009) (deferring to an FCC interpretation contained in In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991 and the Junk Fax Prevention Act of 2005, 21 F.C.C.R. 3787, 3814 (Apr. 6, 2006) that the court found to be "reasonable and consistent with the language of the statute"); *but see, Abbas*, 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697 (holding that the portion of the 2003 FCC Order addressing text messaging "is not entitled to Chevron deference because the FCC articulated it without any process").

### B.    Statutory Language

Because the FCC's interpretation was issued without clear notice and is not a biding regulation issued pursuant to the FCC's regulatory authority, the FCC's interpretation is

"'entitled to respect' only to the extent it has the 'power to persuade.'"  *Black*, 459 F.3d at 799.

For the following reasons, the language and purpose of the TCPA support an application of its

prohibitions to text messages and accordingly the FCC's interpretation is persuasive.  The Court

therefore holds that Plaintiff has sufficiently alleged a "call" under § 227 of the TCPA.

### 1.    Definition of "Call"

The question at issue is the meaning of the phrase "to make any call" in § 227 of the

TCPA, and whether this phrase encompasses text messages.  Defendants argue that this phrase

cannot include text messages because SMS text messaging technology did not exist when

Congress enacted the TCPA in 1991.  As other courts have recognized,[1] however, the term "call"

in § 227 is not limited to oral telephone calls:

> Webster's defines "call" in this context "to communicate with or try to get into
> communication with a person by a telephone."  Webster's Third New International
> Dictionary 318 (2002).  This definition suggests that by enacting the TCPA, Congress
> intended to regulate the use of an ATDS [automatic telephone dialing system] to
> communicate or try to get into communication with a person by a telephone.

*Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-954 (9th Cir. 2009) (citing *United States*

*v. Amer. Trucking Assoc.*, 310 U.S. 534, 542-43, 60 S. Ct. 1059, 84 L. Ed. 1345 (1940) for the

proposition that "when words of a statute are susceptible to more than one meaning, courts are to

interpret them in a manner which is reasonable given the subject matter of the statute and its

purpose"); *see also Abbas,* 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697 ("the definition of

'call' includes 'to communicate with or try to communicate with a person by telephone,' which

could include SMS messages, but does not demand as much" (citing Webster's Third New

---

[1]  The Seventh Circuit has not addressed the definition of the term "call" under the TCPA.  While the Court
cites to and finds some of the analysis presented by courts outside of the Seventh Circuit persuasive, these
decisions are not controlling and the Court conducts an independent review of the issues presented by the
present motion to dismiss.

International Dictionary of the English Language, Unabridged 318 (1961)); *Joffe*, 211 Ariz. 325, 329, 121 P.3d 831 ("given that the TCPA was enacted to regulate the receipt of automated telephone calls, Congress used the word call to refer to an attempt to communicate by telephone"). Although text messaging was not available in 1991, the statutory language does not limit the word "call" to oral communications via telephone.

Defendants also rely on *Unelko Corp. v. Prestone Prods. Corp.*, 116 F.3d 237, 240-241 (7th Cir. 1997) for the proposition that a dictionary definition of "call" cannot inform the Court regarding Congressional intent. In *Unelko*, however, the Seventh Circuit stated that review of dictionary definitions is "often . . . useless for deciding a contract dispute." Conversely, reliance on dictionary definitions for an undefined statutory term is well-established:

> The cardinal rule is that words used in statutes must be given their ordinary and plain meaning. *United States v. Wilson*, 159 F.3d 280, 291 (7th Cir. 1998). We frequently look to dictionaries to determine the plain meaning of words, and in particular we look at how a phrase was defined at the time the statute was drafted and enacted.

*Sanders v. Jackson*, 209 F.3d 998, 1000 (7th Cir. 2000); *see also United States v. Genendo Pharm.*, *N.V.*, 485 F.3d 958, 963 (7th Cir. 2007) (employing dictionary definition to interpret statutory language); *Smith v. United States*, 507 U.S. 197, 201 (1993) (same).

Defendants do not contest that text messaging is a form of communication by phone. As noted above, while text messaging was not a capability in 1991, the plain meaning of the term "call" at that time includes communications by phone, and does not prohibit application of the statute to text messaging. Moreover, Defendants state that, "Fox does not suggest that the TCPA ought <u>never</u> apply to new technologies. But the mere fact that it must be possible to apply statutes to new technologies . . . does not dictate that the term 'call' as used in the TCPA should be expanded to include text messages." (R. 37-1, Defendants' Reply, p. 9.) Indeed, the Seventh

Circuit has recognized that statutes must be permitted to apply to technologies not in existence when a statute was drafted.

In *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984), the Seventh Circuit explained:

> Furthermore, plaintiffs' contention that Section 304(a) could not apply to the later-enacted Section 5382(b) leads to an absurd result. Given plaintiffs' interpretation, statutes could never apply to circumstances not in existence at the time of enactment of the original statute, so that, e.g., "a 1925 statute dealing with 'news media' could not apply to television, and a 1930 statute dealing with 'motor cars' could not apply to Volkswagons." R. Dickerson, The Interpretation and Application of Statutes 129 (1975).

*Id.* at 1213. Defendants' argument that interpreting the word "call" to include text messages would lead to absurd results because § 227(b)(1)(A) must then be applied to any new or existing technology is therefore not persuasive. Indeed, the legislative history of the TCPA reflects that Congress anticipated future technologies when it enacted the statute. *See, e.g.,* 137 Cong. Rec. S18784 (1991) (statement of Sen. Hollings) ("The FCC is given the flexibility to consider what rules should apply to future technologies as well as existing technologies."). Nothing in the TCPA requires that a prohibited "call" involve real time voice communication.

## 2.     Legislative History

Defendants also argue against an interpretation of the word "call" that includes text messages by contending that Congress' key objective in enacting the TCPA was not merely to restrict solicitation by telephonic means, but to limit the ability of automatic dialers to tie up a recipient's phone line. This reading of the statute's purpose, however, is too restrictive. In enacting the TCPA, Congress sought to "protect the privacy interests of telephone subscribers." *Satterfield*, 569 F.3d 946, 954; *see also Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2nd Cir. 2008) ("Congress's stated purpose in enacting the TCPA was to protect the privacy interests of

residential telephone subscribers . . . ."); S. REP. NO. 102-178 at 5 *reprinted in* 1991 U.S.C.C.A.N. 1968, 1972-73 (1991) ("The Committee believes that Federal legislation is necessary to protect the public from automated telephone calls.  These calls can be an invasion of privacy, an impediment to interstate commerce, and a disruption to essential public safety services.").

Additionally, while Defendants are correct that the legislative history reflects a concern regarding the ability of automatic dialers to tie up a telephone line, (R. 37-1, Ex. B, 102 Cong. S. Hrg. 102-918, at 68 (Oct. 10, 1991)), the history cited by Defendants reveals other Congressional concerns as well including that telemarketers contact the same number repeatedly, telemarketers make calls during the dinner hour or late at night, calling parties do not identify themselves, and unsolicited calls placed to cellular numbers often impose costs on the called party.  *Id.* at p. 68. While a text message may not tie up a caller's cellular phone line for receipt of a voice call, text messages pose the same irritation, interruption and potential costs to consumers as voice calls. *See Abbas*, 2009 WL 4884471, 2009 U.S. Dist. Lexis 116697, *25 ("Congress, for its part, found that cheap, pervasive telemarketing practices needed to be controlled, *see* Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2, 105. Stat. 2394 (1991) . . . and intended to restrict unsolicited, automated advertisements and solicitation by telephonic means.  *See* S. Rep. 102-178, at 1 (1991), *reprinted in*  1991 U.S.C.C.A.N. 1968, 1968; *see also* H.R. Rep. 102-317, at 5-6 (1991).")  The Court therefore agrees with the Ninth Circuit's conclusion in *Satterfield* that, "[t]he purpose and history of the TCPA indicate that Congress was trying to prohibit the use of [automatic telephone dialing systems] to communicate with others by telephone in a manner that

would be an invasion of privacy" and therefore "a voice message or text message are not distinguishable in being an invasion of privacy." 569 F.3d at 954.

For the foregoing reasons, the Court agrees with the FCC's interpretation that § 227 of the TCPA applies to text messages. Accordingly, at the pleading stage, Plaintiff has sufficiently alleged that the text message sent to Plaintiff constitutes a "call" for the purposes of the TCPA.

## II. The TCPA Does Not Require Plaintiff to Allege Being Charged For the Text Messages

Defendants also contend that the Court should dismiss Plaintiff's complaint because Plaintiff does not expressly allege that his cellular company charged him for receipt of the text message from Defendants. Plaintiff only alleges that "cell phone users must frequently pay for each text message call they receive or for a text plan that includes a specified amount or number of messages." (R. 1-1, Complaint, ¶ 12.) Contrary to Defendants' position, however, the plain language of the TCPA does not require Plaintiff to allege that he was charged for receipt of the text message that forms the basis for his complaint.

The TCPA provides that it is unlawful for a person "to make any call . . . using any automatic dialing system . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, *or* other radio common carrier service, *or* any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). Defendants rely on the FCC's initial rule promulgation in which the FCC stated that, "we conclude that the TCPA did not intend to prohibit autodialer or prerecorded message calls to cellular customers for which the called party is not charged." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Report and Order, 7 F.C.C.R. 8752, ¶ 45. (1992) ("1992 FCC Order"). This statement by the FCC,

15

however, is not persuasive for three reasons.

First, in the portion of the 1992 FCC Order in which the FCC states that the TCPA is not intended to prohibit calls for which the calling party is not charged, the FCC is specifically discussing "calls made by cellular carriers to cellular subscribers (as part of the subscriber's service)."  1992 FCC Order, ¶ 43;  *see also id.* at ¶ 45 ("cellular carriers need not obtain additional consent from their cellular subscribers prior to initiating autodialer and artificial and prerecorded message calls for which the cellular subscriber is not called").  There is no indication that the FCC's statement applies more broadly than this limited context.

Second, reading the FCC's statement to require that a party be charged for a call in order for a violation of § 227 to occur is contrary to the plain language of the statute.  Due to the occurrence of two disjunctive prepositions in the relevant portion of § 227, the phrase "for which the called party is charged for the call" only modifies "any service."  *See O'Kane v. Apfel*, 224 F.3d 686, 690 (7th Cir. 2000) (identifying the "last antecedent rule of statutory construction which holds" "that where one phrase of a statute modifies another, the modifying phrase applies only to the phrase immediately preceding it") (internal citations omitted)*; see also Shelby County State Bank v. Van Diest Supply Co.*, 303 F.3d 832, 836 (7th Cir. 2002) (applying the last antecedent rule of statutory construction and holding that a modifying phrase contained in a statute applies only to the phrase immediately preceding it).

Finally, as recognized by the *Abbas* court, later FCC pronouncements reflect that the 1992 rule promulgation does not require a charge for a violation of § 227:

> Not two weeks later [after the FCC issued its 1992 FCC Order], Congress amended the TCPA to provide that the FCC "may, by rule or order, exempt from the requirements of *paragraph (1)(A)(iii)* of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party."  *See* Pub. L. No. 102-556, 106

Stat. 4181, 4194-95 (Oct. 28, 1992), enacted as 47 U.S.C. § 227(b)(2)(C).  If uncharged calls were already exempted from the requirements of the TCPA, as the FCC's 1992 Order and [Defendants] maintain, the later congressional amendment would be wholly superfluous, as no FCC "rule or order" would be necessary to exempt such calls from the statute's purview.

*Abbas*, 2009 WL 4884471, 2009 US Dist. Lexis 116697, *9-*10.

The Court therefore finds that the plain language of the TCPA does not require Plaintiff to allege that he was charged for the relevant call at issue in order to state a claim pursuant to § 227.

## III.   The TCPA's Prohibitions Do Not Violate the First Amendment

Finally, Defendants argue that Plaintiffs do not allege the use of a random or sequential number generator, and that the TCPA is unconstitutional if it does not require the use of a random or sequential number generator.

### A.   Plaintiff Alleges Use of an Automatic Telephone Dialing System

Plaintiffs have sufficiently alleged the use of a random or sequential number generator in accordance with § 227 of the TCPA.  Section 227 prohibits a caller from using any automatic telephone dialing system to call a telephone number associated with a cellular service.  The TCPA defines an "automatic telephone dialing system" as "equipment which *has the capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers."  *Id.* (emphasis added).  Plaintiff specifically alleges that Defendants used "equipment with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator."  (R. 1-1, Complaint, ¶ 24.)

Viewing these allegations in the light most favorable to Plaintiff, Plaintiff has alleged a violation of § 227.  It is important for courts to "read a statute to give effect to each word so as to

avoid rendering any words meaningless, redundant, or superfluous" and to avoid readings that would render terms "only surplusage." *Witzke v. Femal*, 376 F.3d 744, 753 (7th Cir. 2004). Here, reading the statute as Defendants propose, with a more narrow view to require Plaintiff to specifically allege that Defendants used the equipment's capacity to store or produce telephone numbers using a random or sequential generator would render the phrase "which has the capacity" mere surplusage. Congress included a definition that provides that in order to qualify as an automatic telephone dialing system, the equipment need only have *the capacity* to store or produce numbers. *See Satterfield,* 569 F.3d at 950 ("a system need not actually store, produce or call randomly or sequentially generated telephone numbers, it only need to have the capacity to do it"). Here, Plaintiff included allegations in his complaint sufficient to meet the requirements of an automatic telephone dialing system, and a contrary ruling would render portions of the TCPA meaningless.

### B.     Section 227 of the TCPA is Constitutional

Defendants argue that an interpretation of § 227(a) that does not require actual use of a random or sequential number generator is an unconstitutional restraint on free speech. Defendants, however, have not met their burden to demonstrate that the TCPA does not survive First Amendment scrutiny.

Courts analyze restrictions on commercial speech using the four-part test set forth in *Central Hudson Gas & Electric Corp. v. Public Servic Commission of New York*, 447 U.S. 557, 566, 100 S. Ct. 2343, 65 L.Ed. 2d 341 (1980). *Centerline Equipment Corp. v. Banner Personnel Service, Inc.*, 545 F. Supp. 2d 768 (N.D. Ill 2008). "Because [Defendants do] not allege that the speech involved here concerns unlawful activity or is misleading, the TCPA will survive First

Amendment scrutiny if (1) there is a substantial government interest, which (2) the TCPA directly advances, so long as (3) the restriction of speech is not excessive in proportion to the interest it serves." *Id.*

Defendants argue that if the TCPA applies to the use of equipment with the capacity to randomly dial numbers regardless of whether that capacity is used, the TCPA would not serve any government interest and would not be narrowly tailored to serve any interest. (R. 15-1, Defendants' Memorandum, p. 13.) Defendants also argue that unused features on equipment used to make a call does not in any way invade the privacy of the party receiving the call. As described above, however, the TCPA serves a significant government interest of minimizing the invasion of privacy caused by unsolicited telephone communications to consumers. Reducing the number of unsolicited calls results in less invasion of privacy for consumers. *See* Telephone Consumer Protection Act of 1991, Pub. L. 102-243 § 2, 105. Stat. 2394 (1991); S. Rep. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968, 1968; H.R. Rep. 102-317, at 5-6 (1991). The TCPA directly advances this interest by limiting unsolicited calls to consumers. *See, e.g., Abbas*, 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697, *27 ("Congress found that consumers were helpless to prevent such unwanted telemarketing calls, and were particularly unable to stop the calls via direct requests to the telemarketers themselves"); *Joffe*, 211 Ariz. 325, 121 P.3d 831 (finding that the TCPA protects consumers' privacy from unsolicited telemarketing calls); *see also Centerline Equipment,* 545 F. Supp. 2d 768 (applying the *Central Hudson* test to the facsimile provisions of the TCPA and finding that "[b]ecause this is a motion to dismiss . . . it is reasonable to infer that these costs [of unsolicited facsimiles], taken in the aggregate across

many faxes to many recipients, would be substantial enough to justify government intervention").[2]

Moreover, the fact that the TCPA only prohibits the use of equipment with the capacity to randomly dial numbers does not reflect that the statutory provision is overbroad.  The limitation on the broadness of a restriction on commercial speech "is not a requirement that Congress always choose the least-restrictive method of advancing an interest; rather, all that is required is a 'reasonable fit' between the interest and the means used to protect it."  *Centerline Equipment*, 545 F. Supp. 26 at 776.  Here, the limitations on the prohibition of the use of equipment with certain capacities reflect that the restriction is not excessive in proportion to the interest it serves.  *Central Hudson*, 447 U.S. 557, 566.  The TCPA only prohibits calls made to telephone numbers assigned to paging services, cellular phone services, specialized mobile radio services, or any service for which the party is charged for the call.  Accordingly, the TCPA does not prohibit calls in which consumers have consented to the call, or where the party is not charged for the call and the call is not made to one of the enumerated phone numbers.  *See, e.g., Abbas,* 2009 WL 4884471, *8, 2009 U.S. Dist. LEXIS 116697 ("Congress left open ample alternative channels through which telemarketers and other would-be automated callers can communicate"); *Joffe*, 211 Ariz. 325, 121 P.3d 831 (finding that the TCPA was narrowly tailored to serve the significant and content-neutral governmental interest).  Defendants have accordingly failed to demonstrate that the TCPA is not sufficiently narrowly tailored.

---

[2] As noted by the *Abbas* court, "the constitutionality of the TCPA as applied to facsimile transmissions has been challenged repeatedly and upheld consistently.  *See, e.g., Holtzman v. Caplice,*, No. 07 C 7279, 2008 U.S. Dist. LEXIS 41188 (N.D. Ill. May 23, 2008) (collecting cases)."  *Abbas*, 2009 WL 4884471, 2009 U.S. Dist. LEXIS 116697, *25-*26.

Because the TCPA directly advances a legitimate government interest and is sufficiently tailored, the Court concludes that Defendants have failed to demonstrate that the TCPA violates the First Amendment.

## CONCLUSION

For the foregoing reasons, the Court denies Defendants' Rule 12(b)(6) motion to dismiss.


DATED:   March 23, 2010                          ENTERED

                                                 _____
                                                 AMY J. ST. EVE
                                                 United States District Court Judge

21