IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| VICTOR LOZANO, individually and on behalf of a class of similarly situated individuals, *Plaintiff*, v. TWENTIETH CENTURY FOX FILM CORP., a Delaware corporation, TWENTIETH CENTURY FOX HOME ENTERTAINMENT LLC D/B/A FOXSTORE.COM, a Delaware limited liability company, *Defendants*. | No. 1:09-cv-06344 Honorable Amy J. St. Eve |

**PLAINTIFF'S UNCONTESTED MOTION & MEMORANDUM IN SUPPORT OF PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

The ubiquity of cellular telephones and the ever-increasing federal regulation of solicitations to consumers through telephones and email have led businesses to look toward alternative means to reach the consuming public. One such medium is text message advertising. This proposed class action settlement involves allegations that Defendants Twentieth Century Fox Film Corp. and Twentieth Century Fox Home Entertainment LLC d/b/a FoxStore.com (collectively "Defendants") transmitted a text message to consumers' mobile phones advertising the DVD release of the motion picture *Robots*[1] in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. ("TCPA"). Defendants filed a motion to dismiss, which was denied, and thereafter answered the Complaint denying the material allegations therein.

After the denial of Defendants' Motion to Dismiss (Dkt. 40), the parties initiated discovery and also agreed to attempt to resolve this matter though private mediation with the Hon. Nicholas Politan (ret.). On June 2, 2010, Defendants and Plaintiff, on behalf of the

---

[1] Released on DVD on September 27, 2005, *Robots* is an animated motion picture set in a futuristic robot world where a young idealistic inventor travels to the big city to join his inspiration's company, only to find himself opposing its sinister new management.

settlement class (collectively the "Parties"), participated in a daylong mediation with Judge Politan in New York City. At the end of the day, the Parties were unable to agree on the terms of a settlement, and Judge Politan made a mediator's proposal as to the principal terms of the proposed settlement. The Parties accepted Judge Politan's proposal. Following the mediation, the Parties exchanged numerous drafts and attended five hearings on the status of the settlement before finalizing the terms of the instant agreement for which Plaintiff seeks uncontested preliminary approval. (*See* Class Action Settlement Agreement (the "Agreement"), a true and accurate copy of which is attached as Exhibit 1.)

Under the Agreement, Defendants will establish a $16 million settlement fund to pay the valid claims submitted by class members, as well as the costs of notice, administrative expenses, incentive awards, and attorneys' fees. The Agreement provides that each class member who received a text message relating to Defendants' motion picture *Robots* and submits a valid claim will receive a $200 cash settlement payment, or lesser pro rata amount (depending on how many valid claims are submitted). This settlement provides the class with a significant portion of the statutory damages made available under the TCPA, and mirrors similar settlements that have received final approval in this District and in Florida and California federal courts. The results are well beyond those required to preliminarily approve the settlement.

I.  **NATURE OF THE LITIGATION**

   1.  *Plaintiff Lozano's Allegations & the Litigation History*

On September 9, 2009, Plaintiff Victor Lozano brought the instant class action against Defendants in the Circuit Court of Cook County, Illinois. (Dkt. 1-4.) On October 9, 2009, Defendants removed the case to this Court pursuant to 28 U.S.C § 1331. (Dkt. 1.) In his complaint, Plaintiff alleged that Defendants engaged in a marketing campaign that caused an

unsolicited text message advertising the DVD release of the motion picture *Robots* to be sent to the cellular phones of thousands of consumers. Plaintiff, on behalf of himself and the proposed class, alleged a single cause of action against Defendants claiming that the transmission of these text message advertisements violated the TCPA. (*See* Dkt. 1-4.)

On November 18, 2009, Defendants' former counsel filed a motion pursuant to Fed. R. Civ. P 12(b)(6) seeking dismissal of the complaint on various grounds. (Dkt. 14-15.) After complete briefing on the motion to dismiss, the Court issued its opinion in a reported decision denying Defendants' motion in its entirety. (Dkt. 40.) Defendants filed an Answer to the Complaint, as well as affirmative defenses, on April 12, 2010. (Dkt. 44.) During the discovery, ESI protocol conference, and Rule 26(f) meet-and-confer that followed the Court's ruling, the Parties agreed to attempt to resolve this matter though private mediation with the Hon. Nicholas Politan (ret.), a retired federal judge and well-respected mediator. (*See* Dkt. 45.)

### 2. *The Mediation*

Prior to the mediation, the Parties propounded several sets of class and merits-based discovery. In addition, the parties agreed to and did informally exchange certain documents and other information that would be needed to effectively engage in the mediation process. (*See* Declaration of Jay Edelson ¶ 2, a true and accurate copy of which is attached as Exhibit 2.) On June 2, 2010, the Parties met in New York City for a formal mediation. After several rounds of arm's-length negotiations with the assistance of Judge Politan, the parties reached an impasse. Just prior to concluding the mediation, Judge Politan made a mediator's proposal as to the principal terms of this Agreement and the Parties accepted the proposal. (Edelson Decl. ¶ 2.)

## II. TERMS OF THE SETTLEMENT

The terms of the settlement are set forth in the Settlement Agreement attached hereto as

Exhibit 1 and briefly summarized as follows:

1. *Class Definition.* The "Settlement Class" is defined as all Persons Nationwide who in September or October of 2005 were sent a text messages that stated:

> GEAR UP 4 THE HILARIOUS ANIMATED FILM ROBOTS ON DVD @FOXSTORE.COM. TAKE AN EXTRA $5 OFF THE ALREADY LOW PRICE BY USING COUPON CODE ROBOFOX PWRDBYZINGY

(Agreement ¶¶ Recital A & 1.36.)

2. *Class Member Payments.* Defendants have agreed to provide $200 settlement payments to each class member who submits a valid claim form from a $16 million Settlement Fund. If the total amount of claims, the incentive award to Plaintiff, attorneys' fees, and settlement administration expenses exhausts the Settlement Fund, class members will receive an amount equaling a *pro rata* amount of the settlement cap. (Agreement ¶ 2.1.)

3. *Additional Relief.* In addition to the individual relief to the settlement class provided above, Defendants have also agreed to provide the following additional relief:

   A. **Payment of Notice and Settlement Administrative Expenses:** Defendants will pay from the Settlement Fund the cost of sending the notice set forth in the Agreement and any other notice as required by the Court, as well as all costs of administration of the settlement. (*See* Agreement ¶ 1.38.)

   B. **Incentive Award for Class Representative:** In addition to any award under the Settlement, and in recognition of his efforts on behalf of the Class, the class representative in this matter shall, subject to Court approval, receive an award of $15,000 to be paid from the Settlement Fund as appropriate compensation for his time and effort serving as the class representative in this action. (*See* Agreement ¶¶ 1.38 & 8.3.)

4

        D.    **<u>Payment of Attorneys' Fees</u>:** Under the Agreement, Defendants will not oppose proposed Class Counsel's request, subject to Court approval, for an amount of up to $3,750,000 for attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund. Defendants have agreed not to object to or otherwise challenge proposed Class Counsel's application for reasonable attorneys' fees and for reimbursement of costs and other expenses if proposed Class Counsel limits its request to this amount. (*See* Agreement ¶¶ 1.38 & 8.1-8.2.) In the event the attorneys' fees requested by Class Counsel are not approved by this Court, this will not prevent the Agreement from becoming effective, nor shall it be grounds for termination of the Agreement.

        4.    *The Release.* In exchange for the relief described above, Defendants, and certain independent contractors, and each of their related and affiliated entities will receive a full release of all claims related to the transmission of text messages advertising the DVD release of the motion picture *Robots* to the above-defined class. (*See* Agreement ¶¶ 1.28-1.30 & 3.1-3.2 for a description of the complete release language.)

**III.**    **<u>THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED</u>**

    Prior to granting preliminary approval of a class action settlement, the Court should determine that the proposed settlement class is a proper class for settlement purposes. *Manual for Complex Litigation* (Fourth) § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). A class may be certified under Federal Rule of Civil Procedure 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513 (7th Cir. 2006);

*Hinman v. M and M Rental Cen., Inc.* 545 F. Supp. 2d 802, 804 (N.D. Ill. 2008). In addition, the plaintiff must demonstrate one of the three provisions of Rule 23(b). *Amchem*, 521 U.S. at 614; *Hinman*, 472 F. Supp. 2d at 804-05. Here, Plaintiff Lozano is seeking certification of the Settlement Class under Rule 23(b)(3), which requires that common questions of law or fact predominate and that maintaining the suit as a class action is superior to other methods of adjudication. *See Amchem*, 521 U.S. at 615-16; *Makor Issues & Rights, Ltd. v. Tellabas, Inc.*, 256 F.R.D. 589, 594 (N.D. Ill. 2009). In this case, each of the prerequisites is met.

  1. *There is a Sufficiently Numerous and Ascertainable Class*

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Although there is no bright-line test for numerosity, a class of forty is generally sufficient to satisfy Rule 23(a)." *Hinman*, 472 F. Supp. 2d at 805-06. A "definiteness" requirement has also been read into the requirements of Rule 23(a) and is satisfied where the proposed class "members can be ascertained by reference to objective criteria and may be defined by reference to defendant's conduct." *Id.* at 806. Here the proposed class encompasses consumers nationwide and Defendants have represented that the text message at issue was transmitted to 98,852 cellular phone numbers contained in a list that will be used to provide notice to the proposed Class. (Edelson Dec. ¶ 3; Agreement ¶¶ Recital A & 4.2(a).) Accordingly, the proposed class satisfies the numerosity and definiteness requirement.

  2. *The Requirement of Commonality is Satisfied*

Commonality, the second requirement of class certification, necessitates that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). This element is met where there is a "common nucleus of operative fact," even if only one common question exists. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). Commonality is often present where

defendants have "engaged in standardized conduct toward members of the proposed class." *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998); *Hinman*, 472 F. Supp. 2d at 806.

As alleged in this case, all members of the proposed class share a common statutory TCPA claim that arose out of the standardized conduct of the Defendants: the transmission of a text message advertising the DVD release of the motion picture *Robots* to class members' cellular phones. Proving a TCPA violation would require the resolution of whether the equipment used to send the allegedly offending messages was an "automatic telephone dialing system" ("ATDS") and other common factual inquiries. *See* 47 U.S.C. § 227(b)(1)(A). In addition, as the claims of the class are based on the same legal theory, that Defendants violated the TCPA, another common question is whether Settlement Class members are entitled to statutory damages under the TCPA as a result of this conduct. Thus, commonality is satisfied.

### 3. *The Requirement of Typicality is Satisfied*

The typicality requirement of Rule 23(a)(3) focuses on whether the class representative's claims "have the same essential characteristics as the claims of the class at large." *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596-97 (7th Cir. 1993). The claims of the named plaintiff must stem from the same course of conduct that gave rise to the claims of the class, and must rest on the same legal theory. *Rosario*, 963 F.2d at 1018; *Hinman*, 545 F. Supp. 2d at 806. Typicality does not require claims to be "identical," and is generally "liberally construed." *Gasper v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Courts have found that typicality is met where the defendant's action of sending unsolicited advertisements resulted in TCPA claims of the named plaintiff and members of the class. *See, e.g., CE Design v. Beaty Const., Inc.,* 07 C 3340, 2009 WL 192481, *5 (N.D. Ill. Jan. 26, 2009).

Plaintiff Lozano and the proposed Settlement Class alleged that they received an identical text message advertising the DVD release of the motion picture *Robots*, a common course of conduct. As a result of this alleged conduct, Lozano and the proposed Settlement Class are entitled to identical statutory damages under the TCPA. Accordingly, Plaintiff Lozano, by pursuing his own claims, will advance the interests of the proposed Class in satisfaction of Rule 23(a)(3).

4. *The Requirement of Adequate Representation is Satisfied*

The final Rule 23(a) prerequisite requires that the representative parties have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This inquiry "serves to uncover conflicts of interest between named parties and the class they seek to represent." *Amchem*, 521 U.S. at 625. To satisfy the adequacy requirement, Lozano, as class representative, must establish that: (1) his claims are not antagonistic or in conflict with those of the proposed class, (2) he has sufficient interest in the outcome of the case, and (3) experienced, competent counsel represents him. *Hinman*, 545 F. Supp. 2d at 807. It is persuasive evidence of the adequacy of proposed class counsel where they have been found adequate to serve as class counsel in other cases. *Gomez v. Ill. State Bd. of Educ.,* 117 F.R.D. 394, 401 (N.D. Ill. 1987).

In the case at hand, Plaintiff Lozano's interests are entirely representative of and consistent with the interests of the proposed Settlement Class—all have allegedly received an unauthorized text message advertisement from Defendants, and his pursuit of this matter has demonstrated that he will be a zealous advocate for the Class. *See CE Design*, 2009 WL 192481, *5 (finding typicality where defendant's practice of sending unsolicited advertisements to the named plaintiff and the proposed class resulted in the claims of the potential plaintiffs being

8

"based upon the same legal theory, *i.e.* violation of the TCPA"). Thus, Mr. Lozano has the same interests as the Settlement Class, with the primary interest of obtaining relief from Defendants for transmitting a text message that allegedly violated the TCPA.

Similarly, proposed class counsel have regularly engaged in major complex litigation, and have extensive experience in consumer class action lawsuits involving cellular phone technology. (*See* Edelson Decl. ¶ 4.) Plaintiff's counsel have been appointed as class counsel in several complex consumer class actions and have been appointed as class counsel for similar TCPA text messaging cases. *See Weinstein, et al. v. The Timberland Company,* No. 06-cv-0454 (N.D. Ill.); *Satterfield v. Simon & Schuster*, No. 06-cv-2893 CW (N.D. Cal.); and *Espinal v. Burger King Corp. et al.*, No. 09-20982 (S.D. Fla.). Accordingly, Plaintiff's counsel will adequately represent the instant Settlement Class.

    **5.**    *The Settlement Meets the Requirements of Rule 23(b)(3)*

Once Rule 23(a) is satisfied, Plaintiff must also demonstrate one of the three requirements of Rule 23(b). *Payton v. County of Kane,* 308 F.3d 673, 680 (7th Cir. 2002). Rule 23(b)(3) provides that a class action can be maintained where: (1) the questions of law and fact common to members of the class predominate over any questions affecting only individuals, and (2) the class action mechanism is superior to the other available methods for the fair and efficient adjudication of plaintiffs' claims. Fed. R. Civ. P 23(b)(3).

    **A.**    **Common Questions of Law and Fact Predominate**

The focus of the predominance requirement is whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. To satisfy Rule 23(b)(3), "each class member must share common questions of law or fact with the rest of the class, therefore making class-wide adjudication of the common questions efficient compared to

9

the repetitive individual litigation of the same question." *Lemon v. Int'l Union of Operating Eng'g.*, 216 F.3d 577, 581 (7th Cir. 2000). While the common issues must predominate, they need not be exclusive. *Radamanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424, 435 (N.D. Ill. 2003). Common legal and factual issues have been found to predominate where the class members' claims arose under the TCPA, and where the claims focused on the defendants' advertising practices. *CE Design.,* 2009 WL 192481, at *8-9.

In this case, the central factual and legal issues are whether the Defendants transmitted unsolicited text message advertisements to the Settlement Class, whether the system used to transmit those messages was an ATDS, and whether that conduct violated the TCPA. In addition, Defendants' text message was allegedly transmitted to the class in precisely the same manner and may entitle the class to identical statutory damages under the TCPA. Thus, the common questions resulting from Defendants' alleged conduct predominate over any individual issues that may exist.

### B. This Class Action is a Superior Method of Adjudication

The instant class action settlement is superior to any other method available to fairly and efficiently adjudicate the class members' claims. To determine whether a class action is a superior method, courts often look to whether it is an "efficient use of both judicial and party resources." *Hinman,* 545 F. Supp. 2d at 807. The superiority requirement is satisfied where class members have uniform claims governed by the same law. *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002)). Moreover, the class action mechanism is superior to individual actions in consumer cases with thousands of members as:

> Rule 23(b)(3) was designed for situations such as this, in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate. Reliance on federal law avoids the complications that can plague multi-state classes under state law, and society may gain from the deterrent effect

10

of financial awards.

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006).

This case is particularly suited for class treatment because the claims of the plaintiff and the proposed Settlement Class involve identical alleged violations of a federal statute for the transmission of a text message advertising the DVD release of Defendants' motion picture *Robots*. In addition, absent a class action, most members of the Settlement Class would find the cost of litigating their claims—each of which, in the absence of a finding of willfulness, is statutorily limited to $500 under the TCPA—to be prohibitive. Moreover, because the action will now settle, the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial"). Accordingly, a class action is the superior method of adjudicating this action and the proposed class should be certified.[2]

## IV. PLAINTIFF'S COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL

Under Rule 23, "a court that certifies a class must appoint class counsel . . .[who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i-iv).

---

[2] Class actions brought pursuant to the TCPA's analogous fax spam prohibitions are routinely certified in the Northern District of Illinois. *See Targin Sign Systems, Inc. v. Preferred Chiropractic Center, LTD.*, 679 F. Supp. 2d 894 (N.D. Ill. 2010) (certifying a class of consumers that were sent fax spam via a hired company in violation of an analogous provision of the TCPA); *Design Ltd. v. Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D. Ill. 2009) (certifying a TCPA class of fax advertisement recipients); *see also G.M. Sign, Inc. v. Group C Communications, Inc.*, No. 08-cv-4521, 2010 WL 744262 (N.D. Ill. Feb. 25, 2010) (granting motion for class certification under the TCPA where defendant delivered unsolicited advertisements via facsimile).

The proposed class counsel have diligently investigated Plaintiff's TCPA text-messaging claim and have devoted and will continue to devote time and resources to this litigation. As discussed above, proposed class counsel have experience with similar class action litigation and have been appointed class counsel in analogous consumer class actions. (*See* Edelson Decl. ¶ 4.) Proposed class counsel also have an in-depth knowledge of the law, having been involved in other TCPA text-messaging litigation. Further, Plaintiff's counsel defeated Defendants' Motion to Dismiss and successfully negotiated the settlement terms with the Defendants to the extraordinary benefit of the class. Accordingly, the Court should appoint Plaintiff's counsel to serve as class counsel for the proposed class pursuant to Rule 23(g).

## V.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Courts review proposed class action settlements using a well-established two-step process. Conte & Newberg, 4 *Newberg on Class Actions*, §11.25, at 38-39 (4th Ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, §11.25, at 38-39; *Armstrong*, 616 F.2d at 314. The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314; *Newberg*, §11.25, at 38-39. The preliminary approval stage is an "initial evaluation" of the fairness of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004). If the Court finds a settlement proposal "within the range of

12

possible approval," the case proceeds to the second step in the review process—the final approval hearing. *Newberg*, §11.25, at 38-39.

There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l,* 05 C 5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314). The factors ultimately to be considered by the Court are: (1) the strength of the plaintiff's case compared to the amount of the settlement offer; (2) an assessment of the likely complexity of a trial; (3) the length and expense of the litigation; (4) the amount of opposition to settlement among affected parties; (5) the opinion of competent counsel; and (6) the stage of the proceedings and amount of discovery completed at the time of settlement. *Id.* (citing *Isby,* 75 F.3d at 1199).

A preliminary application of the six-factor test to this case demonstrates that the proposed settlement is "fair, reasonable, and adequate." First, Plaintiff believes his TCPA claim is strong, but is also aware of the untested nature of this claim in this Circuit, and that Defendants have denied the material allegations of the Complaint and have raised several legal defenses, any of which, if successful, would result in the class receiving no payment whatsoever. Taking these realities into account, and recognizing the risks involved in any litigation, the $200 per class member settlement offer is an extraordinary result for the class.

13

In the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Further, evidence and witnesses from across the country would have to be assembled. Given the complexity of the issues and the amount in controversy, the defeated party would likely appeal. As such, the immediate relief provided to the Settlement Class under the Agreement weighs heavily in favor of its approval compared to the inherent risk of continued litigation, trial, and appeal. (Edelson Decl. ¶¶ 5-6, 8.)

With respect to factors five[3] and six, Plaintiff's counsel believes that the proposed Agreement is in the best interest of Settlement Class members because, upon submission of a valid claim form and approval of their claim, they are each provided an immediate payment instead of having to wait for the litigation and appeals to run their course. Further, due to the defenses raised by Defendants, it is possible that the class may receive no benefit whatsoever. Also, the instant settlement was not finalized until proposed class counsel engaged in extensive investigation into the claims and defenses of the class, defeated Defendants' Motion to Dismiss, received information from Defendants in advance of the mediation, and negotiated the settlement with the aid of Judge Politan. (Edelson Decl. ¶ 7.)

Finally, the Court need not rule on a blank slate as to the fairness, reasonableness, and adequacy of the instant settlement. Similar class action settlements have received final approval in this District and in the Northern District of California. *See Weinstein v. The Timberland Co. et al.*, No. 06-cv-00484 (N.D. Ill.) (approving settlement creating a $7 million settlement fund for the transmission of 40,000 text messages entitling each class member to a $150 settlement payment); *Satterfield v. Simon & Schuster, Inc. et al.*, No. 06-cv-02893-CW (N.D. Cal.) (approving settlement creating a $10 million settlement fund for the transmission of 59,000 text

---

[3] Presently, there is no opposition to the settlement and, given the strength of this settlement, the parties expect little or no opposition to the settlement by class members.

14

messages entitling each class member to a $175 settlement payment). Accordingly, the proposed Agreement, which creates a $16 million settlement fund where each recipient of the allegedly unauthorized *Robots* text message advertisement is entitled to a $200 settlement payment, is equally fair, reasonable, and adequate, and warrants Court approval.

## VI.  NOTICE TO THE CLASS SHOULD BE APPROVED

When certifying a settlement class under Rule 23(b)(3), the substance of the notice to the settlement class must describe in plain language the nature of the action, the definition of the class to be certified, and the class claims and defenses at issue. Furthermore, the notice must explain that settlement class members may enter an appearance through counsel if so desired, that class members may request to be excluded from the settlement class, and that the effect of a class judgment shall be binding on all class members. *See* Fed. R. Civ. P. 23 (c)(2)(B). In addition to the substance of the notice, the manner of dissemination must also satisfy Rule 23 and Due Process, which require that the Class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

The proposed notices in this case satisfy both the substantive and manner of distribution requirements of Rule 23 and Due Process. The Agreement contemplates a four-part notice plan designed to reach as many potential Settlement Class members as possible. First, direct notice of the settlement will be sent via U.S. Mail to those Settlement Class members whose addresses are obtained through reverse-directory searches of the cell phone numbers that received the text at issue. Notice will also be published in 1/8- and 1/2-page advertisements in newspapers and publications nationwide. Additionally, the settlement administrator will establish a website serving as the "long-form" notice, which will contain relevant Court documents and provide for

15

the online submission of claims. The settlement administrator will support the effectiveness of the settlement website with targeted on-line advertising. Finally, Plaintiff may issue an agreed-upon press release announcing the settlement. The proposed notices and claim form are attached as Exhibits A-D to the Agreement and should be approved by the Court. As such, the proposed methods of notice comport with Rule 23 and the requirements of Due Process. (*See* Agreement ¶ 4.)

### VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court: (1) certify the Settlement Class; (2) appoint Victor Lozano as the Settlement Class representative; (3) appoint Lozano's counsel as class counsel; (4) preliminarily approve the proposed Agreement; (5) approve the form and methods of the proposed notice; (6) and grant such further relief as the Court deems reasonable and just. A proposed preliminary schedule leading to final approval is contained in the Proposed Order separately submitted to the Court.

Dated: November 16, 2010　　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　　　VICTOR LOZANO,
　　　　　　　　　　　　　　　　　　　　　　individually and on behalf of a
　　　　　　　　　　　　　　　　　　　　　　class of similarly situated individuals,

　　　　　　　　　　　　　　　　　　　　　　 /s/ Ryan D. Andrews

　　　　　　　　　　　　　　　　　　　　　　Jay Edelson
　　　　　　　　　　　　　　　　　　　　　　Myles McGuire
　　　　　　　　　　　　　　　　　　　　　　Michael J. McMorrow
　　　	　　　　　　　　　　　　　　　　　　Ryan D. Andrews
　　　　　　　　　　　　　　　　　　　　　　EDELSON MCGUIRE LLC
　　　　　　　　　　　　　　　　　　　　　　350 N. LaSalle St., Ste. 1300
　　　　　　　　　　　　　　　　　　　　　　Chicago, Illinois 60654

**CERTIFICATE OF SERVICE**

      I, Ryan D. Andrews, an attorney, certify that on November 16, 2010, I served the above and foregoing *Plaintiff's Uncontested Motion & Memorandum in Support of Preliminary Approval of Class Action Settlement* by causing true and accurate copies of such paper to be filed and transmitted to the persons shown below via the Court's CM/ECF electronic filing system.

Marc Eric Rosenthal
John Andrew Sloat
Catherine J. Spector
Proskauer Rose LLP
70 W. Madison, Suite 380
Chicago, IL 60602
mrosenthal@proskauer.com
jsloat@proskauer.com
cspector@proskauer.com
312-962-3530

      /s/ Ryan D. Andrews
      Ryan D. Andrews